## DITTO v. WALLACE STATE BANK.

Circuit Court of Appeals, Eighth Circuit.
November 23, 1927.

No. 7720.

1. **Bankruptcy** ⟜414(3)—**Evidence held insufficient to support finding that bankrupt concealed or destroyed records to conceal financial condition (Bankr. Act, § 14b [2]; 11 USCA § 32.**

Evidence *held* insufficient to support finding that bankrupt concealed or destroyed records with intent to conceal his financial condition, within Bankruptcy Act, § 14b (2), being 11 USCA § 32, so as to warrant denial of petition for discharge.

2. **Bankruptcy** ⟜414(3)—**Evidence held insufficient to support finding that bankrupt in keeping books intended to conceal financial condition (Bankr. Act, § 14b [2]; 11 USCA § 32).**

Evidence *held* insufficient to support finding that bankrupt in keeping books, or in failing to keep them, intended to conceal financial condition of partnership, of which he was member, within Bankruptcy Act, § 14b (2), being 11 USCA § 32, so as to warrant denial of petition for discharge.

3. **Bankruptcy** ⟜409(2)—**Intent is element of objection to discharge in bankruptcy, on ground that bankrupt's handling of books of account was to conceal financial condition (Bankr. Act, § 14b [2]; 11 USCA § 32).**

Intent is element of objection to discharge in bankruptcy, under Bankruptcy Act, § 14b (2), being 11 USCA § 32, on ground that bankrupt destroyed and concealed books of account or records from which financial condition might be ascertained, with intent to conceal financial condition.

Appeal from the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

In the matter of Claude O. Ditto, bankrupt. Petition by bankrupt for discharge, to which the Wallace State Bank, a creditor, filed objections. From an order denying the petition for discharge, bankrupt appeals. Reversed, with directions.

George M. Corlett, of Monte Vista, Colo., and William B. Vates, of Pueblo, Colo., for appellant.

Jesse Stephenson, of Monte Vista, Colo. (Herbert W. Martin, of Monte Vista, Colo., on the brief), for appellee.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. Appellant was adjudged a bankrupt on June 15, 1923, on his petition. When he applied for his discharge appellee, one of his creditors, filed objections, alleging that the bankrupt, with intent to conceal his financial condition had destroyed and concealed or failed to keep books of account or records from which such condition might be ascertained. Bankruptcy Act, § 14b (2), being 11 USCA § 32. The court ordered that a hearing be had before the referee on the application and the objection thereto. The referee, after taking the offered proof, reported it to the court and recommended that discharge be denied on his finding that the bankrupt failed to keep books of account or records from which his financial condition might be ascertained, with intent to conceal his financial condition. On July 10, 1924, the court entered an order granting bankrupt's petition for discharge. On September 12 following the court entered an order declaring that its order of July 10 was erroneous, vacated it, and entered an order denying discharge. On March 27 following the court, on petition of the bankrupt, set aside said orders, opened the matter for further hearing and referred it to the referee to take additional testimony. The referee took additional testimony, made his report, and the court in November, 1926, entered its final order denying bankrupt's petition for discharge, from which this appeal was taken.

In the fall of 1920, and for some time theretofore, John F. Correll and one Graves were and had been engaged as partners in the business of buying and selling automobiles, maintaining a garage and doing repair work at Monte Vista, Colorado. They were agents for Buick cars. Their business was carried on under the partnership name of Valley Buick Auto Company. They had paid $10,000 for the Buick agency there. In October, 1920, Graves sold his interest in the partnership to the bankrupt, and he and Correll continued as partners in carrying on the business until it was finally sold out in March, 1923. They were not prosperous. Their assets at the time of sale were not sufficient to pay their indebtedness. The Wallace State Bank at Monte Vista, one of their creditors and the objector to discharge, advised the sale and took an active part in completing it. It received the full consideration paid by the purchaser and distributed that sum pro rata to partnership creditors. Several months after the sale was made appellant went into bankruptcy. Apparently he had no assets and it was difficult to name a trustee who would act. The first two who were appointed declined, the third accepted, and this delayed action. So the hearing before the referee did not come on until several months after the adjudication. It conclusively appears that the system of bookkeeping

kept by Correll and the bankrupt after the latter bought Graves' interest was a continuation of the system that had been maintained by Correll and Graves, and Correll seems to have looked after keeping the books until he became interested in another business in November, 1922, to which he thereafter gave his principal attention and left the automobile business largely to the bankrupt. Correll described the system of bookkeeping at the garage as a daily record and ledger system and a file in which invoices were kept. While he did not keep close track of the affairs of the automobile business after November, 1922, he went to the garage occasionally and looked over the business. He testified that the condition of the affairs of the partnership could have been ascertained at any time from the books, that the accounts of the business were all kept on a double page daily record, and accounts were all posted in the ledger, which was a loose-leaf book. A check book with three checks to the page, with stubs on which notations as to issued checks were made, was also kept. He testified that the partnership books were all taken to the bank when the sale was being discussed and a list of the accounts receivable was there taken from the books before the sale was made. The bankrupt assisted in collecting these accounts and turned the money into the bank. The daily record book was a wide book with ruled columns, with designations as to the items to be entered in each. Correll testified that when these columns were added up for the business transacted during a month it would constitute a complete monthly statement, and it was the only book that was used in making up the firm's income tax report. He never saw these books after they were taken to the bank. The loose-leaf ledger had an expensive cover, and the leaves showing the firm's business were taken out and taken to the bank. The stenographer at the bank made up a list from these books of the accounts receivable. Correll testified that when he would go to the garage and look over the business of the partnership he would learn what was being done up to the time the sale was finally made about the middle of March. After the sale the books were put in a large box at the garage and remained there for several months before anyone called for them, while the place was in possession of the purchaser of the business. Some or all of them were later taken to the office of the bankrupt's attorney. It was discovered that the check book was missing and it was finally found in the garage. The sale of the business was made under the state Bulk Sales

Law, and the affairs of the partnership were ascertained from the books for that purpose. No complaint was made at that time that the books did not correctly show the business of the partnership. The bankrupt was not familiar with keeping books until he became a partner with Correll in 1920, but the system used was a simple one and there is nothing to indicate that he did not endeavor faithfully to keep it up after the burden fell on him. An employee in the garage appears to have given him some assistance. Some entries were not made on the day of the transaction and two or three days might pass until they were all put down. The referee in his second report found the testimony unsatisfactory as to the keeping of the books from November, 1922, up until March, 1923. He said:

"The system of books used by the firm was not a complete system, but if carried out would have shown, and probably did show up until November, 1922, the financial condition of the firm. This conclusion is arrived at on the testimony of Mr. Correll. On account of loss of important parts of the system subsequent to November, 1922, it is impossible otherwise to judge of the completeness of the system of the books. I am satisfied that the records were not kept up between that date and March, 1923, when the sale was made. * * * The bankrupt's ignorance of bookkeeping as found in my first report also must be considered on the question of intent. * * * As stated above I find that there was a failure of the bankrupt to keep books of account properly recording transactions between November, 1922, and March, 1923."

[1] He also reported that there had been a destruction or concealment of some of the records by the bankrupt. It appears that the books were taken to the bank more than once for the purpose of there ascertaining the condition of the partnership business, and there is some dispute between the witnesses whether some of the records were not left there. In any event, there is no denial that all of the records of the partnership business at the garage at the time the purchaser took possession were put in a large box and left there. The bankrupt testified that the cover of the loose-leaf ledger was an expensive and valuable one and he took it off and sold it, but that the leaves showing the business of the partnership were retained. We think the evidence does not support a finding that the bankrupt either concealed or destroyed any of these records.

For a few months prior to the sale of the

partnership assets its credit was such that it was compelled to pay for its purchases on delivery. Some of them were shipped to it C. O. D. To meet that situation it made deposits in another bank in Monte Vista so as to have the funds on hand. It had done business principally with the objecting creditor bank, and it was contended that the partnership should have contained a detailed exposition of those transactions. In answer it is said that the bank book and the checks against the deposits of that bank show the transactions there, and there was no necessity of an account in the partnership books covering in detail the account with that bank. The partnership account was in the later months usually overdrawn at the objecting bank, and it was also indebted to that bank on notes which it had given. It is not clear from the testimony whether the deposit account in the second bank was made with checks on the Wallace State Bank or with money drawn out of that bank and then deposited in the other bank, or by receipts at the garage deposited in that bank, or in part from all of these sources, but the purpose of opening an account there has been stated and the evidence shows there was no other purpose. Of course the records at each bank with the partnership, disclosed by the bank's books, the partnership passbooks and the partnership checks on those banks were complete records of those transactions and it does not appear that they were not in accord with the partnership books kept at the garage.

[2, 3] The bankrupt is a young man. He had had very little business experience when he bought into the partnership. He was not familiar with the methods of bookkeeping. The old system that had been used was maintained. During the four remaining months beginning with the time that Correll gave his attention to other interests the bankrupt tried to carry out the method that had been established by the old firm. We think the record fails to support any basis for a finding that the bankrupt had any intention of concealing the financial condition of the partnership in his keeping of the books, or that he failed to keep them with any such intent. This intent is, of course, an element of the objection to discharge, so made by the Bankruptcy Act. Indeed, we strongly doubt whether the books kept up to the time the partnership sold out failed to disclose its financial condition. They were submitted to the bank, they were there examined, a list of the accounts receivable was taken from the books, and it does not appear that it was even

suggested at that time that the books did not show the financial condition of the partnership. The evidence shows that they were put in a box and left in the garage after the sale was made, unless it be that some of them were inadvertently left at the bank. The bankrupt left Monte Vista and sought and obtained employment elsewhere. Later this controversy came on. The order appealed from is reversed, with direction to grant the bankrupt his discharge.